## SEALS v. SHARP.—212 S. W. (2d) 620.

Easter Section.　March 8, 1948.

Petition for Certiorari denied by Supreme Court, June 12, 1948.

Hodges & Doughty, of Knoxville, for plaintiff in error.

Everett M. Smith, of Knoxville, for defendants in error.

McAMIS, J. Action to recover for personal injuries and property damage sustained when an automobile owned and driven by plaintiff Sharp collided with a truck driven by defendant Seals while hauling lumber for the truck owner, the defendant Hatfield Lumber Company, a partnership of which Seals was a member. The appeal is from the court's action approving a jury verdict for $2,400 in favor of the plaintiff.

We are urged with much zeal and ability to reverse because, it is said, defendants were denied a fair trial by the purposeful interjection of incompetent and highly prejudicial evidence tending to show that the truck was covered by public liability insurance. This again brings to the fore the troublesome question of the propriety of continuing the trial and refusing to order a mistrial where such evidence crops out or is intentionally introduced by counsel or by the plaintiff himself during the progress of the trial. Other questions, less vigorously pressed, go to the amount of the verdict, the charge of the court and refusal to charge a special request tendered

by defendants. We do not understand that it is seriously insisted there was no material evidence to go to the jury.

The collision occurred on a straight stretch of paved highway 18 feet in width. Sharp, going in an easterly direction, up grade, at a moderate rate of speed, and on his right side, saw the truck, coming west and meeting him, cut across the road in the direction of his car. He pulled off on the shoulder where he was struck by the truck traveling according to Seals' testimony 30 to 35 miles per hour, according to Sharp 40 to 45 miles per hour. Seals, the driver of the truck, admits in his testimony that he was on the wrong side of the highway and that his truck skidded 70 feet before the collision. He says, however, that the brakes on the truck pulled it to the left side of the highway when he attempted to stop to avoid striking a car, going in the same direction as the truck, which suddenly stopped in front of him just east of another car parked on the north side of the highway. He says the brakes on the truck had been relined about 10 days before and had never before pulled the truck to the left as in this instance.

The great weight of the evidence shows that there was no other car between the truck and the parked car. In fact all the other testimony indicates there was no other car involved. And the better evidence is that the parked car was much further west than Seals' testimony would indicate. His testimony on this point is further weakened by his testimony on cross examination that he admitted following the accident that it was his fault.

But assuming that a defect in the brakes unknown before, in the absence of any inspection within at least the past 10 days, would constitute a defense as against one who had pulled off the pavement to avoid being

struck and was admittedly blameless, a question about which we entertain grave doubt (170 A. L. R. 613), and conceding that Seals' testimony on that question made an issue for the jury, we think the whole evidence shows without serious question that he did not have his truck under proper control and that this was the proximate cause of the collision.

Sharp testified he saw the truck when it was 150 feet away. The truck, as stated, was going downgrade and, being on higher ground, Seals for an equal if not greater distance could see all three cars, the parked car, the car in front of him (if there was one) and Sharp's car coming from the opposite direction. He could well have anticipated that the car in front of him would have to stop to avoid striking either the parked car or the Sharp car. Yet, according to his own statement, he did not apply his brakes to check his heavily loaded truck until he was only 70 feet away and too close to stop and avoid a collision either with the car in front of him or with the Sharp car.

On the question of the amount of the verdict, the proof shows that the actual property damage sustained plus medical expenses incurred would amount to approximately $1,200 or half the amount of the verdict. In addition, plaintiff sustained rather serious personal injuries. He was unconscious for a few hours. A cut in the hairline on his head has left him with a permanent scar. A sprained knee still required medical treatment several months after the injury. These and other minor injuries were of a painful nature and required some nursing by his family. For all these injuries and the suffering which they caused the jury allowed not in excess of $1,200. We think the verdict is clearly not ex-

cessive and the amount of the verdict is not suggestive of bias, caprice or prejudice on the part of the jury.

We have dealt at some length with the evidence before the jury both on the question of liability and as to the amount of damage sustained since the effect of the court's refusal to declare a mistrial because of the intrusion of the question of liability insurance can be determined only in the light of the prejudice resulting. We are forbidden to reverse where it does not affirmatively appear that the action of which complaint is made affected the result. Code Section 10654; D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897; and see Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461, involving a discussion of liability insurance in the jury room.

Cases in this State dealing with the subject of reversal on appeal because of the harmful effect of liability insurance being discussed in the presence of the jury fall into two groups. The first group deals with the effect of such discussion taking place in the jury room, a question not here involved. The other involves, like the present case, the effect of evidence or remarks of counsel before the jury. In this group fall Manufacturing Company v. Woodall, 115 Tenn. 605, 90 S. W. 623; Ingolsby v. Burnett, 163 Tenn. 173, 40 S. W. (2d) 1013; Harbin v. Elam, 1 Tenn. App. 496; Stearns v. Williams & Price, 12 Tenn. App. 427; Potts v. Leigh, 15 Tenn. App. 1; Lasater Lumber Co. v. Harding, Tenn. App., 189 S. W. (2d) 583.

While a number of these cases hold, at least by inference, that if a plaintiff or his counsel persist in seeking to improperly influence the jury by voluntary references to liability insurance a mistrial should be granted,

in none of them was a judgment actually reversed except in Manufacturing Co. v. Woodall, decided before the Act of 1911, now Code Section 10654, referred to above. Judge DeWitt lays down the rule that the question "calls for treatment according to the circumstances of each case." Potts v. Leigh, supra. And in Lasater v. Harding, supra, the most recent case on the question, it was said that the tendency of the courts is toward a more liberal rule in refusing reversals on the ground that it appears from the evidence that the defendant carried insurance since jurors have become more cognizant of the fact that the carrying of liability insurance is now a general practice. In that case the proof was sufficiently clear to justify the action of the trial court in directing the jury to find the issues in favor of the plaintiff and when, after reviewing the evidence, it was found that the verdict was not excessive the judgment was affirmed.

In the present case the plaintiff was asked to state what the defendant had said to him about the accident to which he replied: "He asked me who I was and said he wanted to turn it in to the insurance company." The court thereupon instructed the jury in language we consider sufficiently emphatic not to consider the statement of the witness for any purpose. Later, plaintiff was asked and answered the following question:

"What statement did he (defendant) make relative to that particular fact (whose fault it was) in your presence or to you?

"He said he knew it was not my fault and that he hoped I got something out of it."

It is insisted the existence of insurance is implied in this statement and that it was made after plaintiff knew

by reason of what had already been said on that question that it was improper.

 The objectionable statement appears to have been made in connection with getting before the jury an admission made by Seals and we do not think under all the circumstances the refusal of the court to declare a mistrial should be overruled. Necessarily, some discretion must be left to the trial judge in such matters and it is not altogether a matter of meting out punishment to the plaintiff for his wrongdoing that is to be considered. The State is interested in the repose of litigation and if it is clear that justice has been done and that another trial would result in the same verdict as in the former trial a reversal should be denied. Each case should be determined upon its own facts and if it affirmatively appears from lack of support in the evidence for the verdict rendered or otherwise that harm has resulted the court should not hesitate to reverse. In this case, however, when we look to the evidence, it not only does not appear that prejudice resulted but, on the contrary, it affirmatively appears, both from the findings on the issue of liability and the amount of the verdict, that the result was not affected by references to insurance.

Under these circumstances, the statute, Code Section 10654, comes into play to prevent a reversal on appeal. See Thomason v. Trentham, supra, 178 Tenn. 37, at page 41, 154 S. W. (2d) 792, at page 793, 138 A. L. R. 461.

We consider next the insistence that the court erred in the charge to the jury in construing the declaration as charging a violation of Code Section 2682.1 making it a violation of law to drive a truck in excess of 40 miles per hour. We do not think the remarks of plaintiff's

counsel before the charge was given warrant the construction that he disclaimed any intention of basing the action on a violation of statute as defendant insists. So we must look to the declaration itself. The pertinent language is:

". . . wrongfully, *unlawfully* and negligently, and at a rapid rate of speed, to-wit, forty to forty-five miles per hour run and drive a Chevrolet truck . . ." etc. (Emphasis ours.)

█ Code Section 2682 makes it unlawful to "drive any vehicle upon a highway at such a speed as to endanger the life, limb, or property of any person . . ." Section 2682.1 provides a speed limit of 40 miles for trucks as the court charged. The first count charges that the vehicle operated by defendants was a truck; that it was being operated at a speed up to 45 miles per hour and charged that this operation of the truck was unlawful. While we think the charge of a violation of the statute might have been more clearly stated, it is not incapable of the construction placed upon it by the court.

█ It is not necessary to charge the exact language of the statute or refer to the Code or statute as enacted. It is enough if, by a fair and reasonable construction of the declaration as a whole, it charges violation of a statute controlling defendant's conduct under the facts outlined. See Moore & McFerren v. Fletcher, 145 Tenn. 97, at page 103, 236 S. W. 924, at page 925; 41 Am. Jur. 294, Pleading, Section 11.

The truck could not have been operated in excess of 40 miles per hour without violating the statute and we think there was no error in charging the substance of the statute.

84

It is insisted the court erred in charging that defendants would be liable if they violated the statute. The court elsewhere fully charged as to contributory negligence and proximate cause and it was not necessary to repeat these portions of the charge in the same sentence or paragraph each time there was a reference to defendants' liability under the statute. Kingsul Theatres v. Quillen, Tenn. App., 196 S. W. (2d) 316.

We think there was no error in charging the jury that they could not return a verdict for more than the amount sued for in the declaration.

The defendants tendered a special request in which they requested the court to charge the doctrine of sudden emergency in connection with their insistence that the parked car blocked the north side of the highway. The request fails to take into account whether the negligence of Seals, the driver of the truck, brought about the emergency and, for this reason, was properly refused. Quigley v. Askew, 12 Tenn. App. 298. The fact that the court gave another reason for refusing the request is not material on appeal.

Affirmed.

Howard and Goodman, JJ., concur.