LOGWOOD et al. v. NELSON et ux.—250 S. W. (2d) 582.

Eastern Section. May 2, 1952.

Petition for Certiorari denied by Supreme Court, July 11, 1952.

Phillips & Hale, of Rogersville, for plaintiffs in error.

Thomas H. Rogan, of Rogersville, for defendants, in error.

McAMIS, J. Mrs. Henry R. Nelson sued her daughter, Betty Nelson Logwood, and E. L. Coffey to recover damages for personal injuries sustained as the result of a collision between an automobile driven by Mrs. Logwood, in which Mrs. Nelson was riding, and an automobile owned and operated by Coffey. Her husband sued for loss of services and medical expenses incurred in the treatment of Mrs. Nelson. The cases were tried together before the court and a jury and resulted in verdicts for $10,000 and $1,250, respectively, upon which judgments were entered.

Both defendants have appealed. Coffey's appeal is predicated solely upon the insistence that a verdict should have been directed in his behalf at the close of all the evidence because, it is insisted, Mrs. Nelson and her daughter, Mrs. Logwood, were engaged, at the time of the collision ; upon a joint enterprise and that the negligence of Mrs. Logwood, implicit in the verdict of the jury, operates to bar the action against him. Mrs. Nelson insists, by the single assignment here filed, that the judg-

ment should be reversed and a new trial granted as to her because of the intentional intrusion of the question of liability insurance during the direct examination of Mrs. Nelson by her counsel.

The accident occurred before daylight on the morning of December 9, 1950, at a point about 65 feet west of a bridge across Flat Creek on Highway 11-W in Knox County. When the car, driven by Mrs. Logwood and in which the plaintiff Mrs. Nelson was riding, entered the bridge going west it began to skid on a covering of snow and ice. Mrs. Logwood was unable to bring the car to a stop until it ran off the road on the north shoulder at a point, as stated, about 65 feet west of the bridge. There is evidence to support a jury finding that when the Logwood car came to rest Coffey had not yet reached the eastern approach to the bridge and that he traveled the length of the bridge, 209 feet, plus 65 feet before the collision occurred, notwithstanding there were no obstructions to interfere with his view of the Logwood car and the tail light was burning. Mrs. Nelson was thrown from the car by the impact of the collision and severely injured. Since there is no assignment that the verdict in either case is excessive we need not consider the nature and extent of her injuries.

The proof shows that for some time prior to December 9, 1950, Mrs. Nelson's son who was also a brother of Mrs. Logwood, was stationed at an Army Camp near Atlanta, Georgia. We gather that he had left his car at the Nelson home. At any rate, he had written Mrs. Nelson requesting that she procure a driver and send his car to him. The son was to pay all the expenses of the trip to Atlanta with the car and transportation for the return trip. Mrs. Nelson had made efforts to secure a driver but had not been able to find anyone willing to make the trip

except her daughter, Mrs. Logwood. Mrs. Nelson, according to the proof, was unable to drive and the record is silent as to her purpose in going along with Mrs. Logwood. It was pursuant to the son's request that the parties were proceeding with the son's car along Highway 11-W at the time of the collision.

■■ In the leading case of Schwartz v. Johnson, 152 Tenn. 586, 280 S. W. 32, 33, 47 A. L. R. 323, a joint enterprise was defined as follows:

"In a joint enterprise, in order to impute the negligence of one of the parties to the other, each must have authority to control the means or agencies employed to execute the common purpose. Nesbit v. Town of Garner, 75 Iowa 314, 39 N. W. 516, 1 L. R. A. 152, 9 Am. St. Rep. 486; Koplitz v. St. Paul, 90 N. W. 794, 86 Minn. 373, 58 L. R. A. 74.

" 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.' Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N. W. 763."

In the Schwartz case two young men, Edward Schwartz and Jeff D. Johnson, Jr., prior to the death of Schwartz, were riding around in an automobile, drinking whiskey, visiting picture shows and otherwise enjoying themselves. The automobile belonged to Johnson's father. It was driven by Johnson at the time of the accident which resulted in the death of Schwartz. In discussing the application of the doctrine of joint enterprise, Mr. Chief Justice Green said in that case:

"We doubt if this is a case of joint enterprise, in which the negligence of the driver of the car in respect to its operation could be imputed to his companion. The car belonged to the elder Johnson, who allowed it to be used by his son, and the son was running the car. It does not appear that the Schwartz boy was undertaking to direct the operation of the car, or had any authority so to do."

Later, in the same opinion, appeared the following quotation:

█ " 'It is somewhat difficult to state a comprehensive definition of what constitutes a joint enterprise as applied to this class of cases, but is perhaps sufficiently accurate for present purposes to say that to impute a driver's negligence to another occupant of his carriage, the relation between them must be shown to be something more than host and guest, *and the mere fact that both have engaged in the drive because of the mutual pleasure to be so desired (derived) does not materially alter the situation.*' "

Withey v. Fowler Co., 145 N. W. 923, 164 Iowa 377 (Emphasis ours).

In Berryman v. Dilworth, 178 Tenn. 566, 160 S. W. (2d) 899, the plaintiffs had accompanied the defendant-driver on an all-night party and were returning home at the time of the accident. In that case the court reviewed Schwartz v. Johnson, supra, and held that the joint enterprise theory is predicated on the postulate that, in carrying out a common purpose, each of the parties is acting as the agent of the other with equal and joint right of control in the prosecution of the common enterprise. It was held, under the facts of that case, that the trial court had correctly refused to charge the jury on the question of joint enterprise.

■ In Burris v. Farrell Brothers, 14 Tenn. App. 121, 124, the following test for determining the existence of a joint enterprise was taken from Berry on Automobiles:

"The test in determining the question (of joint enterprise) is whether the persons were jointly operating or controlling the movements of the vehicle in which they were riding. In order that there be such a joint undertaking it is not sufficient merely that the passenger or occupant of the machine indicate to the driver or chauffeur the route he may wish to travel, or the place to which he wishes to go, even though in this respect there exists between them a common enterprise of riding together. The circumstances must be such as to show that the occupant and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it." Sec. 644, p. 514.

■■ Obviously, under these holdings, there are lacking the essentials of a joint enterprise. Mrs. Nelson acted merely as an intermediary in securing the driver for her son. There is no proof that her purpose in accompanying Mrs. Logwood on the trip was anything more than the pleasure of traveling with her daughter and visiting her son at camp. It is clear that she did not go along on the trip to control or direct the movements of the car since, apparently, she knew nothing about the operation of an automobile. So far as appears, the trip could have been made as well without her. She paid no part of the expenses and no right of control or attempt to control is shown.

The burden of proof was upon defendant Coffey to show that the contributory negligence of Mrs. Logwood was imputable to Mrs. Nelson, the plaintiff.

At the least, under the facts of the case, the question of the existence of a joint enterprise was for the jury. See cases collected at 48 A. L. R. 1083.

 The insistence that liability insurance was purposely injected into the case is based upon questioning of Mr. and Mrs. Nelson by plaintiff's counsel as to whether a friendly relationship between them and their daughter, Mrs. Logwood, persisted after the accident and the institution of the present suits. The court overruled defendants' objection based solely on the ground of immateriality, ruling the evidence material as bearing on the question of the weight of the testimony of Mr. and Mrs. Nelson. Both testified to a continuation of a cordial relationship following the accident.

The insistence is that the jury could only infer from this that Mrs. Logwood was protected by liability insurance and would not be compelled to pay any judgment that might be rendered against her, and that this testimony was offered for the purpose of unfairly influencing the jury.

The practice generally followed has been to move for a mistrial as soon as evidence designed to so influence the jury is offered or unintentionally gets before the jury. Stearns, Admrx. v. Williams, 12 Tenn. App. 427; Potts v. Leigh, Adm'r, 15 Tenn. App. 1; Lasater Lumber Co. v. Harding, 28 Tenn. App. 296, 189 S. W. (2d) 583; Seals v. Sharp, 31 Tenn. App. 75, 212 S. W. (2d) 620.

We appreciate the delicate position in which a defendant is placed upon being confronted with the choice of objecting to such evidence in the presence of the jury and thus emphasizing the fact that liability insurance is involved or waiving the point by not objecting. It seems to us, however, that some effort should be made to have the question ruled upon in the absence of the jury and that

a motion for a mistrial, as a prerequisite to relief on appeal, should be made promptly. Otherwise, a litigant could gamble on a favorable verdict and, having lost, seek a new trial on matters brought to the attention of the trial court for the first time on motion for a new trial.

In the present case, the real basis of the objection was not made known to the trial court; nor was any effort made to obtain a hearing in the absence of the jury on the propriety of admitting the evidence offered. As held in Seals v. Sharp, supra, the granting of a mistrial in cases of this kind is a matter resting to some extent in the discretion of the trial court. In this case, the discretionary action of the trial court was not invoked until after the verdict was rendered. We think it came too late on the motion for a new trial.

We find no error and the judgment is affirmed with costs.

Howard, J., concurs.

Hale, J., did not participate in the decision of this case.