Dewey G. LOVIN

v.

James STANLEY and Jeanette Gilliam d/b/a Gilliam's Friendly Cab Company.

Court of Appeals of Tennessee,
Eastern Section.

Feb. 6, 1973.

Certiorari Denied by Supreme Court
May 7, 1973.

Ben C. Davis and Edwin L. Treadway, with Hunter, Smith, Davis, Norris, Waddey & Treadway, and Joe W. Worley, with Wilson, Worley, Gamble & Dodson, Kingsport, for appellants.

Shelby W. Smoot, with Smoot, Hawkins & Associates, Inc., Kingsport, for appellee.

## OPINION

SANDERS, Judge.

Defendants have appealed from a jury verdict awarding the Plaintiff damages for personal injuries and property damage as a result of a collision between a taxicab and a motorcycle.

The Plaintiff, Dewey G. Lovin, was operating his motorcycle in an easterly direction on Sevier Street in the City of Kingsport and the Defendant, James Stanley, was operating a taxicab belonging to the Defendant, Jeanette Gilliam, in a southerly direction on Swannanoa Avenue when the two vehicles were involved in a collision at the intersection of the two streets.

The Plaintiff received rather severe personal injuries as a result of the accident and brought suit in the Law Court in Kingsport for damages.

The case was tried before a jury with The Honorable Howard S. Witt presiding.

The jury found the issues in favor of the Plaintiff and fixed damages at $40,000 for personal injuries and $1,200 as damages to the motorcycle.

Defendants' motion for a new trial was overruled and they have perfected their appeal to this court and assigned error.

The Defendants' first three assignments of error and the sixth assignment of error are as follows:

"1. ASSIGNMENT NO. 1. There is no evidence to support a verdict in favor of the plaintiff and against the defendants.

"2. ASSIGNMENT NO. 2. The verdict is excessive.

"3. ASSIGNMENT NO. 3. The court erred in refusing to grant defendants' motion for a mistrial, which was made after Attorney Smoot, on voir dire examination, had inquired of the jury as follows:

" 'MR. SMOOT: Do any of you gentlemen on the jury, as it is now comprised, own any stock in any liability insurance company?

Is any immediate member of your family employed by such company?' "

"6. ASSIGNMENT NO. 6. It was prejudicial to the rights of the defendants, and each of them, for the attorney for the plaintiff, Mr. Hawkins, to make the following argument to the jury:

" 'The court's going to tell you about the portion of the argument dealing with the fact that she was a widow. She's had hard times in this. He instructed Mr. Davis even when he started this argument that that had no place in this, the financial concern of whether the client can or cannot pay. I've never had a case before where the defense tried to put a limit on something and said that's the limit. The limit's what you all feel is fair and just in considering this man's injuries. I'll tell you this, gentlemen. *You don't have to concern yourself one bit with the source of whatever you deem is reasonable and proper in this case.* I normally wouldn't or couldn't say that and would be ashamed to, but now I have to. *She's in good hands,* gentlemen, is all

I can say. I am ashamed that I have to bring it to you in this way.' "

■ In our consideration of assignments 1, 2 and 3, we must view them not only from the proof in the record but also from the standpoint of what influence, if any, the argument of counsel, as set forth in assignment 6, may have had on the ultimate verdict of the jury.

There is an irreconcilable conflict in the evidence of the Plaintiff and Defendants as to how the accident occurred. The Plaintiff shows that the Defendant ran a stop sign, which was responsible for the accident. However, the Defendant insists that he stopped before entering the intersection; that he looked in both directions and saw nothing; that he proceeded across the intersection and was almost across when he saw the motorcycle approaching from his right; that he was the first to enter the intersection and was almost across it when struck by the Plaintiff.

As to damages, considering the evidence in the light most favorable to the Plaintiff, as we are required to do, we cannot say that the verdict of the jury is excessive per se.

As to Defendants' third assignment of error concerning questions on *voir dire* to the jury, it was held in the case of Swift v. Wimberly, 51 Tenn.App. 532, 370 S.W. 2d 500, that counsel for the Plaintiff was entitled to ask such questions for the purpose of determining whether or not they would exercise their right of peremptory challenges for any particular juror.

■ In this same case, however, the court quoted with approval from a previous opinion in the case of Woods v. Meacham, 46 Tenn.App. 711, 333 S.W.2d 567, as follows:

" 'The rule which we deduce from the above quoted authorities, and which we think applicable to the facts of the instant case, is that where the injection of the question of liability insurance into the case was made deliberately or intentionally by counsel for plaintiff, or where counsel for plaintiff persisted in the matter after the court had sustained an objection, a reversal should be granted; . . . .' "

We deem this portion of the court's opinion pertinent to the case at bar in view of the Defendants' sixth assignment of error.

■ Where an attorney for the Plaintiff has touched on the question of casualty insurance in his examination of the jury, it has been held to be improper for him to say to the jury, in his closing argument, that the question of how "we get the money or where the money comes from is not within your province." Smetana v. Brannin, 302 Ill.App. 442, 24 N.E.2d 220; 4 A.L.R.2d 789.

We think the portion of counsel's argument complained of in Defendants' sixth assignment of error, that "you don't have to concern yourself one bit with the source of whatever you deem is reasonable and proper in this case," carries the same connotation as the argument in the Smetana case, *supra.*

This argument of counsel, followed by the statement, "She's in good hands, gentlemen, is all I can say," was, in effect, saying to the jury, indirectly, that which he would be forbidden to say directly. The advertising slogan, "You are in Good Hands With All State," has been used so extensively in newspaper, radio and television advertising that we think most jurors would equate counsel's statement to Defendants' having insurance coverage.

Our appellate courts have been reluctant to reverse the trial courts for failure to direct a verdict where the question of liability insurance has been injected into the record through inadvertence and not for the intentional purpose of influencing the verdict of the jury. Seals v. Sharp, 31 Tenn.App. 75, 212 S.W.2d 620; Logwood v. Nelson, 35 Tenn.App. 639, 250 S.W.2d

582; Olson v. Sharpe, 36 Tenn.App. 557, 259 S.W.2d 867.

On the contrary, our courts have held that where the Plaintiff's counsel has wilfully and voluntarily referred to liability insurance for the purpose of improperly influencing the jury, a mistrial should be granted. Woods v. Meacham, *supra*; Manufacturing Co. v. Woodall, 115 Tenn. 605, 90 S.W. 623.

In the case at bar it cannot be argued that the statements of counsel were other than deliberate and intentional for the purpose of influencing the decision of the jury. Also, counsel knew these statements to be improper, for he said to the jury, "I normally wouldn't or couldn't say that . . . but now I have to."

In the case of Manufacturing Co. v. Woodall, *supra,* the court, in addressing itself to improper argument of counsel, said:

"It is too well settled to require citation of authorities that in an action of negligence it is incompetent to show the defendant is insured against loss in case of a recovery against him on account of his negligence. Notwithstanding the incompetency of such evidence, yet in the present case it is apparent the counsel of the defendant in error as completely succeeded in getting the jury to believe that an indemnity policy against the accident in question was held by this company as if it had been proven distinctly by witnesses. The effect of this could not have been otherwise than prejudicial to the company, in that the jury would the more readily return a verdict against it upon the assumption that it was indemnified against loss."

Counsel for Plaintiff insists that improper argument before the jury by Defendants' counsel prompted and justified the argument made by him about which Defendants now complain. Plaintiff says that Defendants' counsel attempted to apprise the jury of the fact that there was a limit of $15,000 liability coverage in the case and relies upon the following argument of counsel in support of this contention: "Now assuming, but not admitting that the defendants are liable, in view of all the many factors in this case, the background of the plaintiff, the facts as to the accident, is the case worth Seventy-Five Hundred Dollars? Ten Thousand? Twelve Thousand? I don't see how the case could be worth $15000 in view of the background, and in view of the facts of this case. So, I ask you please, please consider the nature of the injuries. Don't ever consider going beyond $15000 when property damages are $1200. That is, I have to argue damages, assuming that you did find damages. In the first place, we say that there were no damages—I mean there was no liability. But assuming if there is, now beyond that point I cannot go in detail. There is a fence across the road and I shall not discuss the matter further concerning what I think that there would be a ceiling on any possible verdict in this case."

Since there was no proof before the jury concerning liability insurance coverage, we are unable to see how the jury could have concluded from this argument that liability insurance was involved with limits of $15,000 but, even had counsel for Defendants made an improper statement to the jury, as was said in the Woods case, *supra,* "two wrongs do not make a right."

We think the Defendants' sixth assignment of error is well taken and is, accordingly, sustained.

The Defendants have assigned other error but, in view of our ruling on this assignment, the others are pretermitted.

The verdict of the Trial Court is reversed and the case is remanded for a new trial.

The cost of this appeal, together with the cost of the Trial Court, is taxed to the Appellee.

COOPER, P. J. (E. S.), concurs.

LUKE M. McAMIS, Special Judge (Ret.), not participating.